IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES of AMERICA        PLAINTIFF/RESPONDENT

V.    No.  5:11-CR-50075
     No.  5:14-CV-05069
     No.  5:14-CV-05015

ARLES VELASQUEZ          DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. Section 2255 (ECF No. 72) filed February 2, 2014.  The United States of America filed a Response (ECF No. 78) on April 21, 2014.  The Petitioner filed a Reply (ECF No. 79) on May 21, 2014 and the matter is ready for Report and Recommendation.

### I. Background

The Grand Jury for the Western District of Arkansas indicted Arles Velasquez on June 29, 2011. The indictment charged Velasquez with one count of conspiracy to use physical force against Wilver Rosales with the intent to influence, delay, and prevent Rosales from testifying in a federal jury trial. The Grand Jury later superseded the indictment and added the charges of conspiracy to distribute methamphetamine and unlawful possession of firearms. A jury trial was held on that indictment on October 6 , 2011, through October 7, 2011 in Fort Smith, Arkansas.

At the conclusion of the jury trial, the jury returned a verdict of "guilty" against Velasquez on all three counts on the indictment. The Court held a sentencing hearing on April 2, 2012, and sentenced Velasquez to a total of 324 months of imprisonment, three years of

supervised release, and a $100.00 special assessment fee. On April 13, 2012, Velasquez filed a notice of appeal of his conviction and sentence. The Eighth Circuit Court of Appeals denied Velasquez's appeal in an opinion filed on November 29, 2012. The mandate affirming Velasquez's conviction was filed on December 20, 2012 (Doc. 64).

On February 27, 2014, Velasquez filed this instant Motion to Vacate, Set Aside, or Correct Sentence (Doc. 74) contending that his attorney was ineffective because (1) he misadvised the Defendant by "giving inaccurate advice regarding the consequences of proceeding to trial as compared to benefits of the plea offer" (Id., p. 4); (2) misadvised the Defendant "as to the law and strength of the" case against him (Id., p. 5); (3) he failed to "advise [him] of the aquntifiable (sic) benefits of entering a guilty plea, including acceptance of responsibility." (Id., p. 7)

## II.  Discussion

### A.  Ineffective Assistance of Counsel:

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); 2254. *Cox v. Wyrick*, 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996)

(mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

**1. Plea Process:**

The Defendant contends that his attorney gave him "inaccurate advice regarding the consequences of proceeding to trial as compared to benefits of the plea offer." (ECF No. 72, p. 4) Velasquez states in his motion, "Had Movant's Counsel properly explained to Movant herein the subsections of the elements of the offense charged, movant would not have proceeded to trial, but would have accepted the Honorable Government's plea offer."

The Defendant argues in his brief that his "understanding based on what Movant's Counsel had explained to his person was that he was charged with  USING PHYSICAL FORCE and the THREAT OF PHYSICAL FORCE against Wilver Rosales and that "HE HAD PERSONALLY ASSAULTED Wilver Rosales. (ECF No. 74, p. 9).  The Defendant argues that he NEVER assaulted Rosales himself  and that he did not understand the aspect of "influence, delay, or prevent the testimony of any person in an official proceeding" set forth in the statute. (Id., p. 10).

The original indictment was returned June 29, 2011 and only contained one count of Witness Tampering.  The Defendant was charged under 18 U.S.C.A.(a)(2)(A) and (k) which provides that "whoever uses physical force or the threat of physical force against any person, or attempts to do so, with the intent to influence, delay, or prevent the testimony of any per in a official proceeding" shall be guilty of witness tampering.  Subsection (k) provides that

"whosoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

The Defendant was arraigned on the Indictment on July 7, 2011 at which time the charge and penalty would have been explained to the Defendant[1]. (ECF No. 4). The Federal Public Defender was originally appointed to represent the Defendant (ECF No. 6) but was terminated due to a conflict (ECF No. 10) and Christiana Comstock, a CJA attorney, was appointed on July 15, 2011 (ECF No. 11). Ms. Comstock filed a motion to withdraw (ECF No. 13) on July 25 because of a conflict and Duane Kees was appointed (ECF No. 16).

A Detention Hearing was commenced on July 14, 2011 and testimony taken from Charles Robbins concerning the drug trafficking activity of Wilver Rosales and Rigoberto Chavez. (ECF No. 56, p. 5). Bases upon information from Rosales and Chavez the Defendant was arrested. (Id., p. 6). Rosales had agreed to testify against the Defendant but he was assaulted in the jail and the case against the Defendant was initially dropped. (Id.). A video of the altercation was admitted at the hearing (Id., p. 14) showing three individuals assaulting Rosales. Officer Robbins questioned William McKelvey who stated that the Defendant "told him if he would beat up Rosales, he would put money on his books." (Id., p. 18). Jelario Ramirez stated that the Defendant told him that Rosales "was a rat." (Id., p. 19) and Miguel Feliciano stated that he was told to beat Rosales up and that the Defendant said he would "pay him two soups" if he did this. (Id., p. 20).

---

[1] A Superceding Indictment was returned on August 10, 2011 and the Defendant was arraigned on the charges again on August 18, 2011. (ECF No. 26)

The Detention hearing was continued from July 14, 2011 to July 29, 2011 to allow counsel to be substituted because of a conflict of interest. At the hearing on July 29 Mr. Kees was given an opportunity to re-question officer Robbins which he did. Mr. Kees in arguing for his client's release in part stated "Your Honor, the testimony here today is let's assume for one second, and this is a hypothetical, but let's assume for one second that the government is correct that my client in some way requested the assault to take place. I was clear that Mr. Kees understood that his client was not charged with directly striking the witness but in soliciting individuals to assault him.

The court in making the determination to detain the Defendant stated in part:

> Looking at the weight of the evidence against you, there are at least two of the individuals who attacked Mr. Rosales did, in fact, implicate you. Mr. McKelvey stated that you asked him to attack Mr. Rosales and you would put money on his books. Mr. Feliciano said that you asked him to attack Mr. Rosales in exchange for two suits (soups) and that you also threatened that if he did not do it, you would have him beaten up. Mr. Ramirez, although he didn't state that you asked him personally to attack Mr. Rosales, he, he did state that he knew, he had heard, that he was a rat and was going to be beaten up...There is also evidence in this case that after the attack, according to Mr. Rosales, Mr. Velasquez approached him and threatened that if he did not leave the cell block, he would be killed and also made threats against his family. (ECF No. 57, p. 23).

The Defendant was present in the courtroom and could hear and understand the arguments of counsel and the decision of the court[2]. In addition Mr. Kees' affidavit states that he met with the Defendant fifteen (15) times at the Benton County Detention Center and that "I

---

[2] The Defendant's contention that he did not speak or understand English is not supported by the record. At his Arraignments the court documents indicate that he spoke English (ECF No. 4 & 26) and he never requested an interpreter at any court proceeding.

advised him of all the plea offers th at the government had extended to him during the plea negotiations in this case. After the government's last plea offer prior to the jury trial in this case I went to the jail with a memorandum for record. This occurred on September 20, 20 12. I went over each paragraph of the plea agreement with him. In addition. I explained to him the elements of the offense he was charged with and I also explained to him the proof that the government would present to prove each of those elements. I explained to him the possible maximum sentences that were available for his charges according to the statutes. I advised Mr. Velasquez to accept the government's plea offer and enter a guilty plea on this case. I also advised Mr. Velasquez that the government's case against him was strong." (ECF No. 78-1). Mr. Kees stated that the Defendant understood the plea agreement but that "he did not believe the witnesses against him would actually be present for trial and if they were they would not testify against him." (Id.). The Defendant, however, would not sign the memorandum that his attorney had prepared.

It is also noted that the proffered Plea Agreements contain a factual basis which make it clear that the Defendant was not accused of physically assaulting the witness but of inducing other to physically assault him on his behalf. (ECF No. 74-1, pp. 3-6 and pp. 15-17).

The Defendant's conclusory representations that he did not understand that he was not being charged with actually physically assaulting the witness but arraigning for that witness to be assaulted is not supported by the evidence. Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255.  *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.).  *See also  Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal). "The subsequent

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . ." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v.United States*, 778 F.2d 1306, 1308 (8th Cir.1985); see also *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir.1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel).

### 2. Strength of Government's Case

The Defendant next contends that his attorney was ineffective because of "misadvising movant as to the law and the strength of the United States' case against him." (ECF No. 72, p. 5). In his brief the Defendant states that his attorney advised him that he "strongly believed that there was NOT enough evidence for Movant to be convicted of 18 U.S.C. §1512(a)(1)(A) and (K)." (ECF No. 74, p. 14).

The Defendant's attorney specifically denies that he told the Defendant that the government's case was weak. The Affidavit provided by Mr. Kees acknowledges that he met with the Defendant fifteen times, that he made arrangements with the jail to bring a laptop computer into the jail so the Defendant could see the video evidence, and that he made copies of the case file which were given to the Defendant. Mr. Kees' affidavit states that he told the Defendant that the government's case against him was strong and that he urged him to plea but that the Defendant did not want to plea because he believed that the government's witnesses would not testify against him.

The Defendant specifically had the evaluation of the court at his Detention Hearing on July 29, 2011. At that time the court, after summarizing the statements of William McKelvey, Jelario Ramirez, and Miguel Feliciano, the court stated in part:

> I think it's -- if it were one individual that made these allegations

> against Mr. Velasquez that it might be a stretch, as Mr. Kees stated, but when I
> have two individuals that have made these allegations as well as Mr. Rosales,
> a third individual stating that he was threatened by Mr. Velasquez, I think that
> indicates that the weight of the evidence against Mr. Velasquez is strong.

The court's finding's at the Detention Hearing clearly support the attorney's claim that he informed the Defendant that the government's case was strong. The Defendant's desire to go to trial was not because his attorney had told him the government's case was weak but because he felt the government's witnesses would not be available to testify or would not testify against him.

### C. Sentencing Advice:

The Defendant argues in Ground Three that his attorney was ineffective by "failing to 'advise [Him] of the aquintifiable (sic) benefits of entering a guilty plea. (ECF No. 72, p. 7).

#### 1. Statutory Range

The Defendant argues in his brief that his attorney was ineffective because "had trial counsel properly and effectively done a proper investigation and research, he would have known that the Maximum Sentence that Movant could have received on the Offense Charged of (Conspiracy) Tampering with a Witness ... was 20 years, and NOT 30 years. (ECF No. 74, p. 17).

The Defendant seems to argue that his attorney should have "corrected the error in both Plea-Agreements offered by the Honorable Government, in where both stated that Count One carried a Maximum of 30 years, and would have assisted Movant in taking the plea-agreement." (Id.). The Defendant attached copies of both proposed agreements which contained references to the statutory maximum. (ECF No. 74-1, p. 8 & p. 20).

The statutory maximum, however, for the charged offense of using physical force to intimidate a witness is 30 years (See 18 U.S.C.A. §1512(a)(3)(B)(ii)). The calendar referenced at

the Defendant's initial arraignment on the indictment informed the Defendant of the potential maximum penalty of 30 years (ECF No. 2) as did the calendar at the time of his arraignment on the Superceding Indictment. (ECF No. 23). The Defendant's contention about his attorney's failure to properly inform him of the statutory range is without merit.

### 2. Acceptance of Responsibility

The Defendant states in his brief that if his attorney had "correctly advised Movant based on the MAXIMUM SENTENCE he could have received under Count ONE; and had Movant's Counsel correctly advised Movant of the benefit of entering a guilty plea to receive a 3 point level reduction for ACCEPTANCE OF RESPONSIBILITY; Movant would have Plead Guilty." (ECF No. 74, p. 18).

Clearly the Defendant was properly informed at every step of the criminal proceedings concerning the potential maximum punishment and since he was properly informed his contention that he would not have gone to trial if he had know the range of punishment was addressed above and is without merit. He couples this argument however with a contention that his attorney did not explain the 3 point reduction for acceptance of responsibility.

The Defendant was offered a Plea Agreement after the Initial Indictment (ECF No. 1) as well as the Superceding Indictment (ECF No. 22). Both Plea Agreements contain the standard concessions by the government where the government agreed to recommend that the Defendant be sentenced within the guideline range and that the government would offer no objection to "an appropriate-level decrease in the base offense level for acceptance of responsibility" and that if the "offense level in the Presentence Report is 16 or greater and the court accepts a recommendation in the Presentence Report that defendant receive two points for acceptance of

responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points." (ECF No. 74-1, p. 11 and 23).

Mr. Kees' Affidavit stated that he advised the Defendant of all plea offers that the government had extended to him[3] and that on September 20, 2012 he went to the jail and "went over each paragraph of the plea agreement with him." (ECF No. 78-1, p. 1). Mr. Kees states that he went over the elements of the offense, the evidence against him, and the possible maximum sentences on each charge and that he advised the Defendant to accept the Plea Agreement. Mr. Kees then states that "at the conclusion of our discussions of the plea agreement, Mr. Velasquez indicated to me that he understood the elements that the government would be required to prove at trial, that he understood the proof that the government would present at the trial, and that he understood the plea agreement as I had explained it to him. At that time, Mr. Velasquez informed me that, despite my advice to the contrary, he would not plea to anything, including the plea offer that the government had extended to him" and that he did not believe the witnesses against him would actually be present for trial and if they were "they would not testify against him." (Id.).

The Defendant's desire to plea not guilty was based upon the faulty belief that the government's witnesses would not testify against him and not on any misunderstanding that he had about any reduction in sentence he might receive for acceptance of responsibility.

**B. Evidentiary Hearing:**

Finally, Petitioner does not state grounds sufficient to require an evidentiary hearing. An

---

[3] The Defendant does not contend that he did not receive and review these documents and the documents were attached as exhibits by the Defendant with his 2255 motion. (ECF No. 74-1).

-11-

evidentiary hearing on a habeas motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief. *Kingsberry v.United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998). "There is no requirement of a hearing where the claim [s] [are] based solely on vague, conclusory, or palpably incredible allegations or unsupported generalizations." *Amos v. Minnesota*, 849 F.2d 1070, 1072 (8th Cir.), cert. denied, 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988). *Sidebottom v. Delo* 46 F.3d 744, 751 (C.A.8 (Mo.),1995).

The court finds that the record of the case does establish conclusively that the Petitioner is not entitled to an Evidentiary Hearing.

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be **DISMISSED with PREJUDICE**.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of October 2014.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE